UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Robert Dodson, | No.  2:12-cv-02132-TLN-EFB |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| Joseph Esperanca, Jr., LLC, | |
| Defendant. | |

This matter is before the Court on the following motions: (1) Defendant's Motion to Dismiss the Complaint as amended on May 23, 2013 (Mot. to Dismiss, ECF No. 16, Am. Mot. to Dismiss, ECF No. 38), (2) Plaintiff's Motion for Summary Judgment (ECF No. 19), (3) Plaintiff's Motion for Order to Show Cause (ECF No. 31), and (4) Plaintiff's Motion to Amend the Complaint (ECF No. 42).

For the reasons set forth below, Defendant's Motion to Dismiss is granted in part and denied in part.  Plaintiff's Motion to Amend is granted.  Plaintiff's Motion for Summary Judgment is denied as moot.  Plaintiff's Motion for Order to Show Cause is denied.

/ / /

/ / /

/ / /

/ / /

1

# I.      BACKGROUND

## a.      <u>Plaintiff's Complaint for Relief</u>

Plaintiff Robert Dodson ("Plaintiff") brought this action against Defendant Joseph Esperanca, Jr., LLC ("Defendant") on August 16, 2012.[1]  (Compl., ECF No. 1 at ¶ 8.)  Plaintiff alleges he is a physically disabled individual.  (ECF No. 1 at ¶ 8.)  Plaintiff alleges that Defendant owns, operates, and/or leases the Payless Shoe Source in Rocklin, California ("the Store").  (ECF No. 1 at ¶¶ 1, 7.)  Plaintiff alleges the Store has architectural barriers that prevent him from enjoying full and equal access as a disabled individual including:

- Disabled parking spaces with slopes and cross slopes that exceed 2%[2];
- Access aisle with slopes and cross slopes that exceed 2%;
- The words "NO PARKING" are not painted within the access aisle; and
- The signage at the van accessible parking space does not comply with accessibility requirements.

(ECF No. 1 at ¶ 10.)

Plaintiff brings four claims for relief: (1) violation of the American with Disabilities Act ("ADA"); (2) violation of the California Disabled Persons Act; (3) violation of the California Unruh Civil Rights Act; and (4) denial of full and equal access to public facilities under the California Health and Safety Code and California Government Code.

## b.      <u>Scheduling Order</u>

After Plaintiff filed the Complaint, the Court, through the Honorable Judge Burrell, ordered the parties to file a Joint Status Report and to address, among other things, their views on "[a]nticipated amendment of pleadings."  (Order Setting Status (Pretrial Scheduling) Conf., ECF

---

[1] Summons was executed on September 14, 2012.  (Return of Service, ECF No. 5.)

[2] Slope percentage refers to the surface grade which is defined as "deviation from a level surface to an inclined plane stated . . . as so much in a hundred feet or as a percentage of horizontal distance <a 10 percent ~ is one of 10 feet to 100>[.]"  Webster's Third New Int'l Dictionary 984 (3d ed. 1993).  Therefore, a slope of 2% would be equal to a surface where the surface ascended or descended two feet for 100 feet in distance.

1   No. 4 at 2:11–12.)  In the parties' joint status report under "Contemplated Amendments to the

2   Pleadings" Plaintiff stated that "[he] does not anticipate amendments to the pleadings at this

3   time." (Joint Status Report, ECF No. 29 at 2:22.)  Subsequently, the Court issued a status pretrial

4   scheduling order which provides: "[o]ther than an amendment that could be authorized if all or

5   part of the now pending dismissal motion is granted, no further service, joinder of parties, or

6   amendments to pleadings is permitted, except with leave of Court for good cause shown."  (Status

7   (Pretrial Scheduling) Order, ECF No. 34 at 1:19–22.)

8       c.       **Pending Motions**

9       Before this Court are four motions filed by the parties.  First, Defendant moves to dismiss

10  Plaintiff's first claim for relief alleging that Defendant has remediated or is in the process of

11  remediating the alleged architectural barriers to comply with applicable accessibility

12  requirements.[3]  Because the barriers no longer exist, Defendant argues, Plaintiff's ADA claim is

13  moot, and therefore this Court lacks subject matter jurisdiction.  (ECF No. 16, ECF No. 38.)  In

14  response, Plaintiff alleges that Defendant's attempts at remediation have either not fixed the

15  barriers or have created new barriers.  (Opp'n to Def.'s Mot. to Dismiss, ECF No. 20; Opp'n to

16  Def.'s Am. Mot. to Dismiss, ECF No. 41.)  Second, Plaintiff moves for summary judgment with

17  respect to the barriers that Defendant has voluntarily remediated, arguing those barriers violate

18  the ADA as a matter of law.  (Pl.'s Mot. for Summ. J., ECF No. 19-1.)  Third, Plaintiff moves for

19  sanctions against Defendant for submitting declarations that incorrectly conclude the architectural

20  barriers have been removed.  (Pl. Not. of Mot. & Mot. for Order to Show Cause, ECF No. 31.)

21  Finally, Plaintiff seeks leave to amend the Complaint to omit allegations of remediated

22  architectural barriers and allege new architectural barriers.  (Not. of Mot. & Mot. to Am. Pl.'s

23  Compl., ECF No. 42.)

24  / / /

25

26  [3] Defendant filed its first motion to dismiss on November 30, 2012 (ECF No. 10) and an amended
    motion to dismiss on December 28, 2012 (ECF No. 12).  However, the Court struck these filings

27  as improperly noticed and non-compliant with the Local Rules.  (Minute Order, ECF No. 15.)
    Defendant re-noticed its motion to dismiss in compliance with the Local Rules.  (ECF No. 16.)

28

1   **II.    LEGAL FRAMEWORK**

2        a.    <u>**Americans with Disabilities Act**</u>

3        The Americans with Disabilities Act ("ADA") is a comprehensive civil rights law that

4   prohibits discrimination on the basis of disability.  42 U.S.C. § 12101(b)(1).  Title III of the ADA

5   specifically prohibits discrimination against individuals in any place of public accommodation.[4]

6   42 U.S.C. § 12182(a) (prohibiting discrimination on the basis of disability "in the full and equal

7   enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any

8   place of public accommodation").  The standard for discrimination depends on whether the public

9   accommodation is an existing facility or a newly constructed facility.  Existing facilities must

10  remove "architectural barriers" where such removal is "readily achievable." 42 U.S.C. §

11  12182(b)(2)(A)(iv).[5]

12       Congress charged the Attorney General with the task of promulgating regulations to

13  enforce the ADA.  42 U.S.C. § 12186(b); *see also Chapman v. Pier 1 Imports (U.S.) Inc.*, 631

14  F.3d 939, 945 (9th Cir. 2011) (en banc) (describing the ADA's regulatory framework) (citing

15  *Miller v. Cal. Speedway Corp.*, 536 F.3d 1020, 1024–25 (9th Cir. 2008), *cert. denied*, 555 U.S.

16  1208 (2009).  As such, the Department of Justice has promulgated regulations and standards

17  clarifying how public accommodations must meet the obligations of the ADA.  There are two

18  versions of these standards, one published in 1991 and one in 2010.  28 C.F.R. pt. 36, app. D

19  ("1991 Standards"); Nondiscrimination on the Basis of Disability by Public Accommodations and

20  in Commercial Facilities; 75 Fed. Reg. 56236-01, 56250 (Sept. 15, 2010) (codified in 28 C.F.R.

21

---

22  [4] Places of public accommodation are "businesses that are generally open to the public and that
    fall into one of twelve categories listed in the ADA, such as restaurants, movie theaters, schools,
23  day care facilities, recreational facilities, and doctors' offices[.]"  Nondiscrimination on the Basis
    of Disability in State and Local Government Services, 75 Fed. Reg. 56164-01, 56164 (Sept. 15,
24  2010) (codified at 28 C.F.R. pt. 35); 42 U.S.C. § 12181(7) (defining public accommodation).  The
    parties do not dispute that the Store is a public accommodation within the meaning of the ADA.
25

26  [5] Newly constructed facilities are required to be "readily accessible to and usable by individuals
    with disabilities." 42 U.S.C. § 12183(a)(1); *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1047
27  (9th Cir. 2013).  The parties do not dispute that Defendant's store is an existing facility within the
    meaning of the ADA.
28

pt. 36) ("2010 Standards").  For facilities in existence prior to March 15, 2012, compliance with either set of Standards insulates a defendant from liability.  *See* 28 C.F.R § 36.304(d)(2)(i) ("Elements that have not been altered in existing facilities on or after March 15, 2012 and that comply with . . . the 1991 Standards are not required to be modified in order to comply with the requirements set forth in the 2010 Standards."); *Indep. Living Res. v. Or. Arena Corp.*, 982 F. Supp. 698, 727 (D. Or. 1997) ("A [defendant] who adheres to the letter of [the] standards (as interpreted by the courts and DOJ) ordinarily will be in compliance with the ADA regulations, at least with respect to the particular design elements covered by those standards."), *rev'd on other grounds*, *Miller*, 536 F.3d at 1024.

    If a place of public accommodation fails to remove architectural barriers, a private litigant can sue for injunctive relief under the ADA for removal of the barrier to make the facility "readily accessible."  42 U.S.C. § 12188(a)(2); 28 C.F.R. § 36.501(a)–(b).  A private litigant, however, is not entitled to recover compensatory or punitive damages on such claim.[6]  *See id.*  Since a private litigant can sue only for injunctive relief*,* a defendant's voluntary removal of alleged barriers can have the effect of mooting a plaintiff's ADA claim.  *Johnson v. Cal. Welding Supply, Inc.*, No. CIV. 2:11–01669 WBS GGH, 2011 WL 5118599, at *3 (E.D. Cal. Oct. 27, 2011) ("Once a defendant has remedied all ADA violations complained of by a plaintiff, the plaintiff's claims become moot and he or she loses standing, meaning the court no longer has subject matter jurisdiction over the ADA claims.") (citing *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1130–31 (C.D. Cal. 2005)).  Once a federal court determines that a case is moot, it lacks authority to decide it.  U.S. Const. art. III, § 2 (limiting jurisdiction of federal courts to actions where there exists an actual case or controversy); *Sample v. Johnson*, 771 F.2d 1335, 1338 (1985) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies.") (citing *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 72–73 (1983)).  "Voluntary cessation of challenged conduct moots a case, however, only if it is '*absolutely* clear

---

[6] ADA plaintiffs may seek damages by bringing parallel claims under applicable state civil rights laws as Plaintiff has done here.  ADA plaintiffs may also seek recovery of reasonable attorney's fees.  28 C.F.R. § 36.505.

1   that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Adarand*

2   *Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (quoting *United States v. Concentrated*

3   *Phosphate Export Assn., Inc.*, 393 U.S. 199, 203 (1968)).  "Defendants face a heavy burden to

4   establish mootness in such cases because otherwise they would simply be free to 'return to [their]

5   old ways' after the threat of a lawsuit had passed." *Iron Arrow*, 464 U.S. at 72 (alteration in

6   original) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)).

       **b.**        **Motion to Dismiss Under Rule 12(b)(1)**

8          A party may challenge a court's subject matter jurisdiction via motion under Federal Rule

9   of Civil Procedure 12(b)(1).  The challenge can be either facial or factual.  *White v. Lee*, 227 F.3d

10   1214, 1242 (9th Cir. 2000).  A *facial* challenge attacks the pleadings as insufficient to invoke

11   federal jurisdiction whereas a *factual* challenge contests the veracity of the jurisdictional

12   pleadings.[7]  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a factual

13   attack on jurisdiction, a court need not consider the allegations of the complaint as true but may

14   look beyond the complaint to evaluate jurisdictional facts.  *Id.*  "Once the moving party has

15   converted the motion to dismiss into a factual motion by presenting affidavits or other evidence

16   properly brought before the court, the party opposing the motion must furnish affidavits or other

17   evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Id.* (quoting

18   *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir.2003)); *see id.* at 1040

19   (applying summary judgment standard of review to district court's dismissal of action for lack of

20   subject matter jurisdiction).  "A court may not resolve genuinely disputed facts where 'the

21   question of jurisdiction is dependent on the resolution of factual issues going to the merits.'"

22   *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citing *Augustine v. United States*,

23   704 F.2d 1074, 1077 (9th Cir. 1983)).

       **c.**        **Motion to Amend Under Rule 15 and Rule 16**

25          Pursuant to Federal Rule of Civil Procedure 15(a)(2), once a responsive pleading has been

26   filed, "a party may amend its pleading only with the opposing party's written consent or the

---

[7] Motion to dismiss for lack of jurisdiction based on factual attacks is also called a "speaking motion."

1   court's leave." Rule 15(a)(2) further states that "[t]he court should freely give leave when justice

2   so requires."  The Ninth Circuit has held that "[r]ule 15's policy of favoring amendments to

3   pleadings should be applied with extreme liberality." *DCD Programs, Ltd. v. Leighton,* 833 F.2d

4   183, 186 (9th Cir. 1987) (alteration in original) (quoting *United States v. Webb,* 655 F.2d 977,

5   979 (9th Cir. 1981) (citing *Rosenberg Bros. & Co. v. Arnold,* 283 F.2d 406 (9th Cir. 1960) (per

6   curiam))).  The four factors that are commonly used to determine the propriety of a motion for

7   leave to amend are: bad faith; undue delay; prejudice to the opposing party; and futility of

8   amendment.  *See id.* (citing *Loehr v. Ventura Cnty. Cmty. Coll. Dist.*, 743 F.2d 1310, 1319 (9th

9   Cir. 1984); *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973)).  "While all these

10  factors are relevant, the crucial factor is the resulting prejudice to the opposing party." *Howey*,

11  481 F.2d at 1190.  The burden of showing prejudice is on the party opposing amendment. *DCD

12  Programs*, 833 F.2d at 187.  Granting or denying leave to amend rests in the sound discretion of

13  the trial court.  *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996)

14          Once the district court has filed a pretrial scheduling order pursuant to Federal Rule of

15  Civil Procedure 16 and the deadline for amending pleadings set in the scheduling order has

16  passed, as is the case here, Rule 16(b)(4) is implicated.  Rule 16(b)(4) provides that "[a] schedule

17  may be modified only for good cause and with the judge's consent."  Thus, a party must first

18  show good cause for amendment under Rule 16(b)(4); if good cause is shown, the party must

19  demonstrate that the proposed amendment is proper under Rule 15.  *See Johnson v. Mammoth

20  Recreations, Inc.,* 975 F.2d 604, 607–08 (9th Cir. 1992).  Unlike Rule 15(a)'s liberal amendment

21  policy which focuses on the bad faith of the party seeking to interpose an amendment and the

22  prejudice to the opposing party, Rule 16(b)'s focus is the moving party's reasons for seeking

23  modification.  *Id.* at 609.  "The district court is given broad discretion in supervising the pretrial

24  phase of litigation . . . ."  *Miller v. Safeco Title Ins. Co.,* 758 F.2d 364, 369 (9th Cir. 1985); *see

25  also Johnson,* 975 F.2d at 610–11 ("A scheduling order 'is not a frivolous piece of paper, idly

26  entered, which can be cavalierly disregarded by counsel without peril.'") (citing *Gestetner Corp.

27  v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)).

28  / / /

1    **III.    ANALYSIS**

2         a.    <u>**Defendant's Motion to Dismiss the Complaint**</u>

3         Defendant moves to dismiss this action under Federal Rule of Civil Procedure 12(b)(1)

4    arguing this Court lacks subject matter jurisdiction.  (ECF No. 16.)  Because Defendant has

5    removed all of the alleged barriers, it argues, Plaintiff's ADA claims are moot.  Specifically

6    Defendant submits the declaration of Paul Allen, a general contractor who performed the ADA

7    accessibility upgrades at the Store.  (Allen Decl. in Support of Def.'s Mot. to Dismiss, ECF No.

8    16-3.)

9         Plaintiff counters that the disabled parking space and access aisles have a slope in excess

10   of 2% and therefore still violate the ADA and California law.  (ECF No. 20 at 5:13–19.)

11   Additionally, Plaintiff alleges that in its attempt to remediate the architectural barriers, Defendant

12   in fact created additional barriers; for example Plaintiff alleges that the landing at the end of the

13   entrance ramp is not long enough.  (ECF No. 20 at 6:22-25.)  Plaintiff's counsel also declares that

14   the Store's entrance doors also have inaccessible panel-type handles.  (Hubbard Decl., ECF No.

15   20-1 at ¶¶ 5.c, 7.)

16        Defendant admits in reply that a narrow portion of parking space did appear to exceed the

17   maximum slope requirements.  (Allen Decl. in Support of Def.'s Reply to Pl.'s Opp'n to Mot to

18   Dismiss, ECF No. 23 at ¶ 10.)  Defendant opines, however, that this was likely due to vehicle

19   traffic and the uncured asphalt.  (ECF No. 23 at ¶¶ 7, 11.)  Defendant indicates that the "condition

20   will be modified to comply with the applicable ADA standards once weather permits."  (Def.'s

21   Reply to Pl.'s Opp'n to Mot. to Dismiss, ECF No. 22 at 1:22–23.)  Defendant also argues that the

22   landing length and door handles are compliant with accessibility requirements. [8]

23        Defendant then filed a supplemental reply stating that it had modified the parking space

24   such that the surface slope is now less than 2% in any direction.  (Supp. to Reply to Opp'n to

25   Mot. to Dismiss, ECF No. 25; Supp. Allen Decl. in Support of Def.'s Supp. Reply, ECF No. 26 at

26

---

27   [8] The reply also took issue with the Plaintiff's evidence noting that there was "nothing in the
     [plaintiff's] Declaration to indicate the level had been calibrated before being used."  (ECF No.
28   23 at ¶ 9.)

¶¶ 8–9.)

Plaintiff filed objections to the reply as belated and non-compliant with the Local Rules. (Pl.'s Objs. to Def.'s Supp. to Reply, ECF No. 27.)  The Court, through the Honorable Judge Burrell, granted Plaintiff permission to file a response (Minute Order, ECF No. 28), which Plaintiff did.  (Pl.'s Resp. in Opp'n to Def.'s Supp. Reply, ECF No. 30.)  In Plaintiff's response to Defendant's reply, Plaintiff states that the parking space slope still exceeded 2%.  Plaintiff re-alleges that the new landing that Defendant created should have been 60 inches long and not 48 inches long.  Plaintiff also complains that the panel door handles are inaccessible.  Plaintiff further argues that the slope of the entrance ramp exceeds 5% and therefore required handrails. Plaintiff also alleges that the disabled parking space is not located near the closest accessible route to the store's entrance.  (ECF No. 30.)

Defendant objects to Plaintiff's reference to barriers not identified in the Complaint (i.e., the landing length, door handles, the handrails, and the location of the disabled parking space) and objects to Plaintiff's lack of foundation for the slope measurements in the disabled parking space and access aisle.  (Obj. to Pl.'s Resp., ECF No. 33.)  Defendant further argues that the handrail requirements do not apply to entrance curb ramps (only pedestrian ramps).  Defendant also argues that the door handles are compliant with accessibility requirements.  (ECF No. 33.)

Plaintiff filed a response to the objections reiterating that the slope measurements remain in excess of 2%.  (Pl. Reply to Def.'s Obj., ECF No. 35.)

Defendant then filed an amended motion to dismiss.  (ECF No. 38).  The amended motion added a declaration from Certified Accessibility Specialist Gary Layman.  (Layman Decl. in Supp. of Def.'s Am. Mot. to Dismiss, ECF No. 38-2.)  Mr. Layman declares that the slope measurements on the parking space and access aisle are less than 2%.  He notes that all pavement markings, signage, and door handles are in compliance with accessibility requirements.  Mr. Layman also opines that the dimensions and slopes of the landing comply with accessibility requirements and that the ramp does not require handrails.  (ECF No. 38-2 at ¶¶ 4–10.)

Plaintiff filed an opposition to Defendant's amended motion to dismiss stating that the Court should resolve the relevant factual disputes only after appropriate discovery.  (ECF No. 41.)

9

1    Plaintiff also sought to depose Mr. Layman, retain his own expert, and allow that expert to

2    conduct a formal Rule 34 site inspection.[9]

3                    i.       Slope of Disabled Parking Spaces and Aisles

4           The 1991 and 2010 ADA Standards require that disabled parking spaces and adjacent

5    aisles have a slope of no more than 2% grade.  *See* 28 C.F.R. pt. 36, App. D, § 4.6.3, *available at*

6    http://www.ada.gov/reg3a.html ("Parking spaces and access aisles shall be level with surface

7    slopes not exceeding 1:50 (2%) in all directions."); 36 C.F.R. pt. 1191, app. D., § 502.4, *available*

8    *at* http://www.ada.gov/regs2010/2010ADAStandards/2010ADAstandards.htm ("Parking spaces

9    and access aisles serving them shall comply with 302.  Access aisles shall be at the same level as

10   the parking spaces they serve. Changes in level are not permitted.  EXCEPTION: Slopes not

11   steeper than 1:48 [2.08%] shall be permitted."); *see also McCune v. Singh*, No. 2:10–CV–02207

12   JAM–GGH, 2012 WL 2959436, at *4 (E.D. Cal. July 19, 2012) (finding ADA violations for

13   disabled parking spaces which had slopes and cross slopes exceeding 2% in violation of ADA

14   Standards); *Hubbard v. Twin Oaks Health & Rehab. Ctr.*, 408 F. Supp. 2d 923, 931 (E.D. Cal.

15   2004) (same).

16          The parties have provided competing declarations from individuals measuring the slope of

17   the parking spaces and access aisles.  Defendant's declaration states that the applicable slopes are

18   less than 2%; Plaintiff's declarations rebut these statements and proffer that the slope

19   measurements are in excess of 2%.  The Court finds that Plaintiff has sufficiently satisfied its

20   burden that subject matter jurisdiction exists from its declaration that the slope measurements are

21   in excess of 2%.  Furthermore, the Court finds that the issue of the parking lot and access aisle

22   slope is a genuine issue of material fact.  As such, the Court cannot resolve whether Plaintiff's

23

24   [9] Plaintiff asks that the Court take judicial notice of the arguments in his previously filed
     documents "and treat them as if they were fully set forth here."  (ECF No. 41 at 3:10.)  The Court
25   will grant the request of judicial notice. Fed. R. Evid. 201.  However, the Court takes judicial
     notice of the *fact* that the documents were filed.  The Court does not take judicial notice of the
26   *truth* of the disputed factual matters.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir.
     2001) (holding that a court may take judicial notice of undisputed matters of public record but not
27   disputed facts stated in public records).

28

                                                       10

1   claim for injunctive relief under the ADA is moot because the parties dispute the slope

2   measurements and whether the architectural barrier exists.  *Roberts*, 812 F.2d at 1177 (holding

3   that a court may not resolve genuinely disputed facts where "the question of jurisdiction is

4   dependent on the resolution of factual issues going to the merits") (quoting *Augustine*, 704 F.2d at

5   1077).  Accordingly, the Court denies Defendant's motion to dismiss on this ground.

6           ii.      Van Accessible Signage

7           In the Complaint Plaintiff alleges that the disabled parking space signage did not meet

8   accessibility requirements.  However, in later filings, Plaintiff concedes that Defendant has fixed

9   this barrier, and therefore Plaintiff's ADA claim for injunctive relief on this basis is moot.  (*See*

10  Pl.'s Reply in Supp. of Mot. to Am., ECF No. 52 at 2:8–10 ("the van accessible signage and the

11  improper panel handles at the entrance to the store have both been remediated").)  Furthermore,

12  as discussed *infra*, Plaintiff seeks to amend the Complaint; the proposed amended complaint,

13  however, does not include any allegations with respect to the van accessible signage. Thus,

14  because Plaintiff concedes that Defendant has remediated this issue and does not seek to include

15  it in the proposed amended complaint, the Court sua sponte strikes this allegation from the

16  Complaint.  *See* Fed. R. Civ. 12 (f).

17          iii.     Access Aisle Label

18          In the Complaint, Plaintiff alleges that the access aisle adjacent to the disabled parking

19  space did not meet the ADA standards because it did not contain the words "NO PARKING."

20  However, in later filings, Plaintiff concedes that Defendant has fixed this barrier, and therefore

21  Plaintiff's ADA claim for injunctive relief on this basis is moot.  (*See* Pl.'s Reply in Supp. of

22  Mot. Summ. J., ECF No. 51 at 1:8-11 ("it appears defendant properly remediated . . . the "NO

23  PARKING" marked in the access aisle"); Pl.'s Proposed Second Am. Compl., ECF No. 52-1

24  (omitting allegation that "[t]he words 'NO PARKING' are not painted within the access aisle").)

25  Furthermore, as discussed *infra*, Plaintiff seeks to amend the Complaint; the proposed amended

26  complaint, however, does not include any allegations with respect to the access aisle label.  Thus,

27  because Plaintiff concedes that Defendant has remediated this issue and does not seek to include

28  it in the proposed amended complaint, the Court sua sponte strikes this allegation from the

1    Complaint.  *See* Fed. R. Civ. 12 (f).

2                            iv.   Other Alleged Barriers

3            Plaintiff also alleges that the store had inaccessible panel door handles, that the curb-ramp

4    required handrails, and that the disabled parking space was not located near the closest accessible

5    route to the front door of the store.  (ECF No. 30.)  Plaintiff, however, has since conceded that

6    Defendant has remediated the door handles and has abandoned the other issues.  (*See* ECF No.

7    51.)

8            For the foregoing reasons, the Court denies Defendant's motion to dismiss and amended

9    motion to dismiss but sua sponte strikes the paragraphs in the Complaint that reference barriers

10   Defendant has remediated, as set forth above.

11           **b.       Plaintiff's Motion to Amend the Complaint**

12           Plaintiff moves to amend the Complaint to add allegations that the International Symbol

13   of Accessibility ("ISA") sign on the entrance door is not positioned correctly, and that the

14   platform landing at the base of the ramp does not meet the Standards. [10]   (ECF No. 52.-1.)

15           Defendant opposes the amendment arguing that all of the alleged barriers in the proposed

16   amended complaint have been fixed citing the declaration of Certified Accessibility Specialist

17   Gary Layman.  (Opp'n to Pl.'s Mot. for Leave to Am. Compl., ECF No. 47; Layman Decl., ECF

18   No. 45.)  Defendant further argues that because there is only one entrance of the facility, no ISA

19   sign is required for this entrance, and therefore Defendant's non-compliance with the 2010

20   Standards is excused.

21           In reply, Plaintiff maintains that according to his measurements, the slope of the parking

22   space and the access aisle is in excess of 2%.  Plaintiff also argues that the ISA sign should not be

23   on the door, but instead should be on the adjacent wall, and therefore the ISA sign is in the wrong

24   location entirely.  (ECF No. 52 at 3:21-26 ("ISA signs are required to be mounted . . . either on

25   ─────────────
     [10] Plaintiff proposed first amended complaint maintained that Store's access aisle was missing a
26   "NO PARKING" label; the disabled parking van signage was incorrect; the entrance doors had
     inaccessible panel handles; and there was no ISA sign mounted at the Store's entrance.  (*See* Pl.'s
27   Proposed First Am. Compl., ECF No. 42-2 at ¶ 10.)  In his reply materials, however, Plaintiff
     either conceded these architectural barriers had been remediated or omitted them from the
28   proposed complaint.  (ECF No. 52 at 2:13–17; ECF No. 52-1 at ¶ 10.)

                                                   12

1    the wall space next to the latch side of the door, or (as where double doors are provided) on the

2    nearest adjacent wall.").)

3         Neither party addresses whether Plaintiff has shown "good cause" to amend the

4    Complaint beyond the scheduling order deadline.  However, on its own review, the Court finds

5    good cause exists.  *See Johnson,* 975 F.2d at 609 ("Rule 16(b)'s 'good cause' standard primarily

6    considers the diligence of the party seeking the amendment.").  By his proposed complaint,

7    Plaintiff seeks to omit remediated barriers and add new barriers created after the original

8    Complaint was filed.  Therefore, Plaintiff could not have brought his motion to amend prior to

9    Defendant's remediation efforts.

10        Furthermore, despite the lack of briefing by the parties, the Court concludes that

11   evaluation of the four factors under Rule 15 (i.e., bad faith, undue delay, prejudice, and futility)

12   also weigh in favor of permitting amendment.  Defendant provides no evidence of bad faith on

13   Plaintiff's part.  Although Plaintiff did delay in bringing this motion to amend it was not

14   substantial.  The motion was filed on May 23, 2013, a mere two months after the joint status

15   report was filed and scheduling order issued.  Moreover, Defendant does not set forth any

16   prejudice resulting from the amendment.  The Court also finds that the issue of whether the

17   amendment is futile depends on the underlying merits of the architectural barriers alleged in the

18   proposed complaint (i.e., the parking space and access aisle slopes, the length of the landing at the

19   base of the curb ramp, and the location of the ISA sign).  As set forth above, the parties genuinely

20   dispute the merits underlying these alleged architectural barriers, and therefore Defendant cannot

21   demonstrate that amendment would be futile.  Applying extreme liberality to the request to amend

22   pleadings, as it must, the Court grants Plaintiff's request to amend.

23        In granting this amendment, the Court cautions the parties that no further amendment of

24   pleadings shall be allowed without a detailed showing of good cause and explanation of how the

25   four factors (bad faith, undue delay, prejudice, and futility of amendment) impact the motion to

26   amend.  *See Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980) (holding that "a district court has

27   broad discretion to grant or deny leave to amend, particularly where the court has already given a

28   plaintiff one or more opportunities to amend his complaint to allege federal claims").  The Court

13

1    also admonishes Plaintiff that any attempt to introduce new architectural barriers must be

2    included in a properly noticed motion, in accordance with Federal Rules of Civil Procedure and

3    Local Rules, not in a piecemeal fashion.

4         **c.**        **Plaintiff's Motion for an Order to Show Cause**

5          Plaintiff also filed a Motion for Order to Show Cause against Defendant, seeking an order

6    to show why Defendant should not be sanctioned.[11]  (ECF No. 31.)  Plaintiff contends that

7    Defendant's declarations have vexatiously multiplied the proceedings under 28 U.S.C. § 1927 and

8    constitute sham affidavits in violation of Rule 56(h).  (Pl.'s Mem. P.&A. in Supp. of Pl.'s Mot.

9    for Order to Show Cause, ECF No. 31-1.)  Plaintiff protests that after each false declaration

10   submitted by Defendant, his counsel was forced to return to the Store to re-measure and re-

11   photograph the conditions of the Store, and draft a declaration rebutting Defendant's false

12   statements.

13         Defendant counters that it has not filed any of the declarations in bad faith; Defendant also

14   notes that Rule 56(h) is inapplicable, and that there is no requirement that Plaintiff be reimbursed

15   for costs incurred to travel to the Store and obtain factual information.  (Def.'s Opp'n to Mot. for

16   Order to Show Cause, ECF No. 40.)

17         Section 1927 of title 28 in the United States Code provides:

18   
19   > Any attorney or other person admitted to conduct cases in any court
   > of the United States or any Territory thereof who so multiplies the
   > proceedings in any case unreasonably and vexatiously may be
20   > required by the court to satisfy personally the excess costs,
   > expenses, and attorneys' fees reasonably incurred because of such
21   > conduct.

22   Section 1927 sanctions also "must be supported by a finding of subjective bad faith."  *In re*

23   

---

[11] Although Plaintiff's motion is styled as a motion for an order to show cause, it appears
24   substantively equivalent to a motion for sanctions under Federal Rule of Civil Procedure 11.
   Rule 11 provides for the imposition of disciplinary sanctions to check abuses in the signing of
25   pleadings, written motions, and other papers.  A Rule 11 motion, however, requires that the
   moving party detail the offending conduct to the opposing party and provide an opportunity to
26   withdraw the challenged material before filing the motion.  Fed. R. Civ. P. 11 ("[The paper] must
   not be filed or be presented to the court if the challenged paper, claim, defense, contention, or
27   denial is withdrawn or appropriately corrected within 21 days after service or within another time
   the court sets.").

28

1    *Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996) (quoting *New Alaska Dev. Corp.*

2    *v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989)).  "Bad faith is present when an attorney

3    knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose

4    of harassing an opponent."  *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986) (citations

5    omitted); *accord West Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1528 (9th Cir.

6    1990); *Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1185–86 (9th Cir.

7    1988).

8          Although Defendant has certainly "multiplied the proceedings" by filing numerous

9    documents, there is no evidence that the filings were submitted in bad faith.  Although

10   Defendant's declarant opined that the architectural barriers had been eliminated, in his subsequent

11   declaration he indicated that the parking lot surface may be affected by heavy traffic and the

12   curing of the asphalt.  (Allen Decl., ECF No. 23 at ¶ 11 ("It is my opinion based on my

13   experience that this small area of distortion was likely caused by a heavy vehicle driving onto the

14   surface before the surface had finally cured.").)  Nothing in the declaration is inconsistent with a

15   good faith mistake.  Furthermore, Plaintiff does not point to any other evidence beyond these

16   measuring inconsistencies that Defendant's declarations were submitted in bad faith.  Therefore,

17   the Court exercises its discretion and declines to award sanctions.

18         Plaintiff also requests sanctions pursuant to Federal Rule of Civil Procedure 56(h).  Rule

19   56(h) addresses affidavits and declarations submitted in connection with summary judgment

20   motions and provides:

21              If satisfied that an affidavit or declaration under this rule is
               submitted in **bad faith or solely for delay**, the court—after notice
22              and a reasonable time to respond—may order the submitting party
               to pay the other party the reasonable expenses, including attorney's
23              fees, it incurred as a result. An offending party or attorney may also
               be held in contempt or subjected to other appropriate sanctions.
24

25   (emphasis added).  For the same reasons above, the Court finds that Plaintiff has not shown bad

26   faith and declines to award sanctions under Rule 56(h).  The Court further finds that Defendant

27   did not file the declarations solely for delay.  To the contrary, Defendant filed multiple

28   declarations in effort to accelerate – not delay – the disposition of the case by arguing that the

                                                    15

1    architectural barriers had been fixed.

2         The Court also agrees with Defendant that there is no authority for Plaintiff's counsel to

3    recover costs, expenses, or attorney's fees incurred to travel to the subject property to oppose the

4    motion.  In any event, if either party desires to prevent or expedite discovery of information, there

5    are procedures to address those concerns.  *See, e.g.*, Fed. R. Civ. P. 26(c) (providing for protective

6    orders to specify the terms including time and place for the disclosure or discovery); Fed. R. Civ.

7    P. 34(a) (providing that a party may serve requests upon another party to inspect, measure,

8    survey, photograph, test, or sample the property or any designated object or operation on it).

9         Finally, while the Court finds that sanctions are not appropriate at the moment, the Court

10   is disturbed by the barrage of amended, supplemental, duplicative, and corrected documents filed

11   by the parties.  Defendant appears to have filed multiple motions to dismiss prematurely or before

12   the construction fixing architectural barriers had been completed.  Plaintiff likewise attempted to

13   allege new barriers in opposition and reply papers rather than in a properly noticed motion to

14   amend.  These amended, supplemental, duplicative, corrected documents are largely a waste of

15   resources.  Moreover, such conduct is dangerously close to violating Rule 11.  *See, e.g.*, Fed. R.

16   Civ. P. 11(b) (prohibiting parties from filing documents in order to harass . . . or needlessly

17   increase the cost of litigation); *see also* Fed. R. Civ. 1 ("These rules . . .  should be construed and

18   administered to secure the just, speedy, and inexpensive determination of every action and

19   proceeding.").  Consistent with Rule 1, the Court ORDERS the parties to meet and confer prior to

20   bringing any additional motions.  Any notice of motion filed in this action shall detail the moving

21   party's efforts to meet and confer with the opposing party and the opposing party's response.

22   Failure to comply with this order shall result in the imposition of sanctions on the offending party.

23   **IV.    CONCLUSION**

24        For the foregoing reasons, it is HEREBY ORDERED that:

25        1.    Defendant's Motion to Dismiss the Complaint (ECF No. 16) as amended (ECF

26              No. 38) is DENIED;

27        2.    The Court sua sponte STRIKES paragraphs in the Complaint (page 3, lines 22–25,

28              page 4, lines 1–3) which reference architectural barriers that have been fixed;

3.      Plaintiff's Motion to Amend the Complaint (ECF No. 42) is GRANTED; Plaintiff shall file document ECF No. 52-1 as "Plaintiff's First Amended Complaint" within seven (7) days of entry of this order;

4.      Defendant's responsive pleading shall be due fourteen (14) days after service of Plaintiff's filing of the First Amended Complaint;

5.      Plaintiff's Motion for Summary Judgment (ECF No. 19) is DENIED as moot in light of the Court's grant of Plaintiff's Motion to Amend; and

6.      Plaintiff's Motion to Show Cause (ECF No. 31) is DENIED.

**IT IS SO ORDERED.**

Dated: December 3, 2013

_____
Troy L. Nunley
United States District Judge

17